J-S44015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.Y., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2222 EDA 2024 |

Appeal from the Order Entered August 9, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002207-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: F.B.Y.-F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.Y., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2223 EDA 2024 |

Appeal from the Decree Entered August 9, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000054-2024

BEFORE:  NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 27, 2025**

T.Y. (Mother), appeals[1] from the order terminating her parental rights

to F.Y. (Child), born in October of 2014.  Mother argues that the trial court

_____

[1] Mother appealed from both the termination and the goal change orders and the appeals were consolidated on September 9, 2024.  However, Mother does not raise any claims concerning the goal change order in brief.  Therefore, it is abandoned for purposes of appeal.  In any event, even if Mother challenged
*(Footnote Continued Next Page)*

erred in terminating her parental rights and by concluding that termination would serve Child's best interests. Following our review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the trial court's opinion.

The trial court thoroughly summarized the events that led the Philadelphia Department of Human Services (DHS) to file a petition for the involuntary termination of Mother's parental rights. *See* Trial Ct. Op., 9/11/24, at 1-9. Briefly, the family became involved with DHS in 2015 when it received a General Protective Services (GPS) report alleging concerns about Mother's mental health, substance use, parenting, housing, and truancy as to Child's older brother, T.Y. *Id.* at 2. On October 11, 2018, Child was adjudicated dependent and fully committed to DHS. *Id.* Mother was subsequently ordered to meet several Single Case Plan (SCP) objectives, but her compliance was minimal. *Id.* at 4.

On February 1, 2024, DHS filed a petition to terminate Mother's parental rights. The trial court held a hearing on the petition on August 9, 2024. At the hearing, DHS called prior CUA case manager Davon Dixon, current CUA case manager Ashley Anderson, and Community Behavioral Health (CBH)

---

the goal change order on appeal, it would be moot in light of our decision to affirm the court's termination decree. *See In re D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020).

court representative Nelendy DeLeon. *See id.* at 3. Both Child[2] and Mother also testified at the hearing. *Id.* at 8-9. Ultimately, the trial court entered its decree terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).

Mother subsequently filed a timely notice of appeal. Both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issues for review:

1. Whether the trial court committed reversible error, when it involuntarily terminated mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S. § 2511 (a)(1), (2), (5) and (8).

2. Whether the trial court committed reversible error when it involuntarily terminated mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the child as required by the Adoption Act, 23 Pa.C.S. § 2511(b).

Mother's Brief at 8 (some formatting altered).

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

---

[2] We note that Claire Leotta, Esq. represented Child's legal interest as Child Advocate. Maureen Pie, Esq. represented Child's best interests as Guardian *Ad Litem*.

- 3 -

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super. 2023) (citing *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)); *see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that "the trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence" (citation omitted and some formatting altered)).

> Termination of parental rights is governed by § 2511 of the Adoption Act[, 23 Pa.C.S. §§ 2101-2938]. Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination. In evaluating whether the petitioner proved grounds under § 2511(a), the trial court must focus on the parent's conduct and avoid using a balancing or best interest approach. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, the court then must assess the petition under § 2511(b), which focuses on the child's needs and welfare. [*T.S.M.*, 71 A.3d at 267].

*In re M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (some citations omitted and some formatting altered); *see also Q.R.D.*, 214 A.3d at 239 (explaining that if "the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child" (citation omitted and formatting altered)). We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm

an order terminating parental rights. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Here, as noted previously, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8) and (b). In its Rule 1925(a) opinion, the trial court thoroughly explained its reasons for terminating Mother's parental rights and also concluded that termination was in Child's best interests. ***See*** Trial Ct. Op. at 11-20.

Following our review of the record, the parties' briefs, the relevant law, and the trial court's well-reasoned analysis, we affirm on the basis of the trial court's opinion. Specifically, we agree with the trial court that termination was warranted under Section 2511(a)(1). ***See id.*** at 12-14; ***see also B.L.W.***, 843 A.2d at 384 (stating that we need only agree with the trial court as to one subsection of Section 2511(a)). Further, we agree with the trial court's conclusion that termination was in Child's best interest pursuant to Section 2511(b). ***See*** Trial Ct. Op. at 18-20. Additionally, we conclude that DHS presented clear and convincing evidence in support of termination and the trial court did not abuse its discretion in granting DHS's petition to terminate Mother's parental rights. ***See H.H.N.***, 296 A.3d at 1263. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>2/27/2025</u>

Received 10/4/2024 9:52:21 AM Superior Court Eastern District

Filed 10/4/2024 9:52:00 AM Superior Court Eastern District
2222 EDA 2024

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION - DEPENDENCY BRANCH**

**IN RE:**

| | | |
|---|---|---|
| **F.Y., a minor, D/O/B: 10/21/2014** | : | **CP-51-DP-0002207-2015** |
| | : | **CP-51-AP-0000054-2024** |
| | : | |
| | : | **51-FN-342677-2009** |
| | : | |
| | : | **Superior Court No. 2222 EDA 2024** |
| **APPEAL OF: T.Y., Mother** | : | **Superior Court No. 2223 EDA 2024** |

**OPINION**

### I.   INTRODUCTION

T.Y. ("Mother"), appeals from the Order entered by this Court on August 9, 2024, involuntarily terminating her parental rights as to her child, F.Y, born October 21, 2014. Testimony for the Goal Change and Termination of Parental Rights (TPR) Hearing (hereinafter the "TPR hearing") occurred on August 9, 2024. The transcript from the TPR hearing is attached hereto as Court's Exhibit A. The Child's testimony from the TPR Hearing is attached hereto as Court's Exhibit B. At the conclusion of the hearing, the trial court found that clear and convincing evidence existed to involuntarily terminate Mother's parental rights pursuant to the Adoption Act, 23 Pa. C.S.A. §2511(a)(1), (2), (5), (8) and §2511(b) and changed the permanency goal to adoption pursuant to the Juvenile Act, 42 Pa. C.S.A. §6351. For the following reasons, this Court's decision should be affirmed.

### II.   FACTUAL and PROCEDURAL HISTORY

The relevant facts and procedural history of this case are as follows. F.Y. was born on October 21, 2014. The Philadelphia Department of Human Services (DHS) became aware of this family on July 20, 2015, when it received a General Protective Services (GPS) report containing concerns for Mother's mental health, substance use, parenting, housing, and truancy as to F.Y.'s

1

older brother, T.Y. The Child was first adjudicated dependent on October 6, 2015, and that dependency petition was discharged on January 7, 2016.

On June 13, 2018, DHS filed a dependency petition as to T.Y. containing allegations of Mother's ongoing substance use, that Mother was neglecting T.Y.'s mental health needs, and truancy concerns. T.Y. was adjudicated dependent on June 29, 2018, but remained in Mother's care. At the September 28, 2018, permanency review hearing for T.Y., the Court ordered DHS to obtain an Order of Protective Custody (OPC) for T.Y. and the Child, F.Y. The Court ordered that Mother was to be held in civil contempt until she disclosed F.Y.'s location or F.Y. was brought to court. On September 28, 2018, DHS obtained an OPC for the Child and placed her in foster care to ensure her safety. At the October 1, 2018, shelter care hearing, the OPC was lifted and F.Y.'s temporary commitment to DHS was ordered to stand.

On October 11, 2018, the Child was adjudicated dependent based on present inability and fully committed to DHS. The Court ordered Mother to be referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen, dual diagnosis assessment, and three random drug screens prior to the next listing. Mother was also ordered to attend the Achieving Reunification Center (ARC) for parenting and employment classes, to provide verification of Social Security Income (SSI) benefits, and to sign all necessary consents and releases of information for herself and the Child. Mother was permitted supervised visits with the Child for two hours at the Community Umbrella Agency (CUA). (See Trial Court Order 10/11/2018).

CUA held a revised Single Case Plan (SCP) meeting for the Child on March 5, 2019. Neither Mother nor Father participated in the meeting. The permanency goal for the Child was reunification. The SCP objectives for Mother were to cooperate with DHS and CUA services, sign all necessary consents and releases, address mental health and drug and alcohol concerns, comply with CEU recommendations following evaluation, comply with drug and alcohol screens, complete parenting

2

classes through ARC, and to comply with court-ordered visitation. At the September 22, 2019, SCP meeting, Mother's SCP objectives were modified to include engaging with ARC for employment services and to obtain employment. Mother's SCP objectives were further modified on December 7, 2019, to include enrolling in an intensive outpatient (IOP) program. Mother failed to participate in either SCP meeting.

Permanency review hearings were held regularly after the Child was adjudicated dependent. At the August 18, 2020, permanency review hearing, Mother was granted unsupervised visitation with the Child. (See Trial Court Order 8/18/2020). At the April 22, 2022, permanency review hearing, Mother's visitation was expanded to include weekend unsupervised day visits in the community. (See Trial Court Order 4/22/2022). However, at the August 25, 2023, permanency review hearing, the Court found that Mother was noncompliant with her SCP objectives and her visitation reverted to supervised in the community with 24-hour and same day confirmation. (See Trial Court Order 8/25/2023). Mother's visitation schedule has remained the same since August 2023.

On February 1, 2024, DHS filed petitions to change the goal from reunification to adoption and to involuntarily terminate Mother's parental rights to the Child. The TPR hearing was held on August 9, 2024.[1] Counsel for DHS called three witnesses to testify at the TPR hearing: previous CUA Case Manager, Davon Dixon, current CUA Case Manager, Ashley Anderson, and Community Behavioral Health (CBH) Court Representative, Nelendy DeLeon. (N.T. 8/9/2024, p. 17-65; p. 66-75; p. 76-81 (Exhibit A)). Mr. Dixon testified that he was assigned to this family's case twice. The first time, he was assigned the case for one year and three months. He was assigned this case again from October 2023 until April 2024 when Ms. Anderson was assigned the case. (N.T. 8/9/2024, p. 18 at 2-13 (Exhibit A)). Mr. Dixon testified that the Child became known to DHS after they

---

[1] The Court held a Permanency Review Hearing for the Child's sibling, T.Y., following the TPR hearing. (N.T. 8/9/2024, p. 8-22 (Exhibit A)).

received a GPS report on July 20, 2015, containing allegations of truancy, parenting, housing, and substance use. He testified that Single Case Plan (SCP) objectives were established for Mother to achieve reunification and that SCP meetings were held regularly throughout the case. (N.T. 8/9/2024, p. 19 at 10-25; p. 20 at 1-2 (Exhibit A)).

Mother's initial SCP objectives were to address mental health and drug and alcohol concerns, comply with random drug screens through the CEU, obtain appropriate housing, provide proof of income, and comply with court-ordered visitation. (N.T. 8/9/2024, p. 20 at 3-15 (Exhibit A)). Mother's SCP objectives remained the same throughout the case. (N.T. 8/9/2024, p. 39 at 23-25; p. 40 at 1-2 (Exhibit A)). Mr. Dixon also testified that historically, Mother was minimally compliant with her SCP objectives and made minimal progress toward alleviating the circumstances that brought the Child into care. (N.T. 8/9/2024, p. 40 at 4-13 (Exhibit A)). At the time of the August 9, 2024, TPR hearing, the Child had been in foster care for seventy months, almost six years. (N.T. 8/9/2024, p. 47 at 14-16 (Exhibit A)).

Mother's first SCP objective was to address drug and alcohol concerns. Mr. Dixon testified that Mother engaged in drug and alcohol treatment throughout the case but never successfully completed a drug and alcohol program. (N.T. 8/9/2024, p. 20 at 17-24 (Exhibit A)). He testified that Mother engaged in drug and alcohol treatment at Clean Slate in November 2022, as well as at West Cayuga Medical Center and Crossroads Treatment Center. Mother did not provide Mr. Dixon with documentation that she successfully completed any drug and alcohol program throughout the case. He also testified that the CUA case file did not contain certificates or other documentation that Mother successfully completed a drug and alcohol program. His testimony also reflected that that Mother was not engaged in a drug and alcohol program at the time of the TPR hearing. (N.T. 8/9/2024, p. 21-22; p. 23 at 1-4; p. 25 at 8-14 (Exhibit A)). Current CUA Case Manager, Ashley Anderson, similarly testified that since being assigned this case in April 2024, Mother had

4

not provided her with documentation that she was engaged in drug and alcohol treatment. (N.T. 8/9/2024, p. 68 at 19-22 (Exhibit A)). CBH Court Representative, Nelendy DeLeon, testified that Mother attended rehabilitation at Interim House in January 2024, but declined intensive outpatient (IOP) treatment, although it was recommended. Ms. DeLeon further testified that the last time Mother engaged in drug and alcohol treatment was at Horizon House in March 2024. She did not successfully complete the program. Ms. DeLeon also testified that the Mother's CBH records made no mention of Mother being administered Suboxone. She stated that Mother was not engaged in drug and alcohol treatment at the time of the TPR hearing. (N.T. 8/9/2024, p. 77 at 3-6 and 10-21; p. 78 at 13-23; p. 79 at 8-25; p. 80 at 1-4 and 21-25 (Exhibit A)).

Mother was also ordered to complete random drugs screens at the CEU. Mr. Dixon testified that Mother was referred to the CEU for random drug screens throughout the case. He testified that Mother attended four of the fourteen times that he sent her to the CEU. On August 25, 2023, January 24, 2024, February 20, 2024, and March 7, 2024, Mother tested positive for marijuana. (N.T. 8/9/2024, p. 25 at 15-25; p. 27 at 1-21 (Exhibit A)). CUA Case Manager, Ms. Anderson, also testified that she sent Mother for random drug screens at the CEU on May 30, 2024, June 17, 2024, July 24, 2024, and August 2, 2024. Mother did not attend the forthwith drug screen after court on May 30, 2024. Ms. Anderson testified that Mother tested positive for marijuana on June 17, 2024, July 24, 2024, and August 2, 2024. (N.T. 8/9/2024, p. 66 at 23-25; p. 67 at 2-24; p. 68 at 1-14 (Exhibit A)). While Mother provided Mr. Dixon and Ms. Anderson with a Patient ID card for medical marijuana, she did not provide dispensary information, receipts, or any other documentation regarding where she obtained marijuana. (N.T. 8/9/2024, p. 30 at 19-25; p. 31 at 1-14; p. 68 at 24-25; p. 69 at 1-6 (Exhibit A)).

Mother's next SCP objective was to address mental health concerns. Mr. Dixon testified that Mother previously engaged in mental health treatment at Merakey in 2020 but did not successfully

complete the program. Mother also engaged in treatment at Intercultural Family Services (Intercultural) in 2022 but did not successfully complete the program. He further testified that the CUA case file did not contain documentation that Mother successfully completed a mental health program. (N.T. 8/9/2024, p. 29 at 3-25; p. 30 at 1-11 (Exhibit A)). CUA Case Manager, Ms. Anderson, also testified that Mother had not provided her with documentation that she was engaged in mental health treatment. (N.T. 8/9/2024, p. 68 at 15-18 (Exhibit A)). CBH Court Representative, Ms. DeLeon, testified that Mother completed a mental health assessment in November 2023, but did not follow through with services. She further testified that Mother was not engaged in mental health treatment at the time of the TPR hearing. (N.T. 8/9/2024, p. 77 at 7-9; p. 80 at 5-12 (Exhibit A)).

Mother's Single Case Plan also included obtaining and maintaining stable housing and providing proof of income. Mr. Dixon testified that he requested proof of income from Mother, but she did not provide proof of income throughout the case. (N.T. 8/9/2024, p. 30 at 12-18 (Exhibit A)). He further testified that during the time he was assigned the case, Mother never provided proof of stable housing. Mr. Dixon stated that Mother resided in a duplex at one point, but that CUA believed that she resided on the porch. He testified that the CUA Outcome Specialist observed Mother's belongings on the porch covered by a blanket, and that the Child reported Mother living on the porch. Mr. Dixon testified that Mother moved out of the duplex due to an insect infestation, and subsequently began residing with family friends. (N.T. 8/9/2024, p. 31 at 15-25; p. 32 (Exhibit A)). He further testified that CUA completed housing referrals for Mother including a Public Health Management Corporation (PHMC) grant. However, Mother reported to him that she was robbed at gunpoint while she was on her way to pay the landlord for the apartment. Mother did not provide CUA with a police report or any other documentation that a robbery occurred. To his knowledge, Mother did not have appropriate housing at the time of the TPR hearing. (N.T. 8/9/2024, p. 32 at 25;

p. 33; p. 34 at 7-17 (Exhibit A)). Current CUA Case Manager, Ms. Anderson, also testified that Mother did not provide her with proof of housing or a current address since she was assigned to this case in April 2024. She also testified that since being assigned this case, she has been unable to assess Mother's housing. (N.T. 8/9/2024, p. 69 at 12-17 (Exhibit A)).

Mother's last SCP objective was to comply with court-ordered visitation. Mother's visits with F.Y. initially were unsupervised in the community. (N.T. 8/9/2024, p. 34 at 18-23 (Exhibit A)). The record reflects that there were issues regarding Mother's unsupervised visitation throughout the case. One concern was that Mother took the Child to her home during visitation, and that the home was not appropriate for the Child. There was also a concern that Mother reported she was going to kidnap F.Y. and take her to South Carolina. As a result, Mother's visitation with F.Y. changed to supervised in the community in August 2023. After Mother's visits reverted to supervised, Mr. Dixon testified that Mother did not visit with F.Y. from August 2023 to March 2024. (N.T. 8/9/2024, p. 34 at 24-25; p. 35; p. 36 at 1-15; p. 37 at 7-12 (Exhibit A)). The testimony also reflected that Mother was inconsistent with visits throughout the case. However, Mr. Dixon testified that when Mother did visit with the Child, the visits went well and there were no issues. (N.T. 8/9/2024, p. 38 at 9-23; p. 39 at 11-21 (Exhibit A)). On redirect examination, Mr. Dixon testified that visits Mother may have missed due to CUA staffing issues, were made up. (N.T. 8/9/2024, p. 65 at 6-17 (Exhibit A)). CUA Case Manager, Ms. Anderson, also testified that Mother visited the Child four times since the last court date of May 30, 2024. (N.T. 8/9/2024, p. 71 at 23-25 (Exhibit A)).

When asked about the relationship between F.Y. and Mother, Mr. Dixon testified that F.Y. loves and respects Mother, acknowledges her as her mother, and that they have a mother-daughter relationship. Nevertheless, there would not be any irreparable harm to F.Y. if Mother's rights were terminated. He testified that the Child did not exhibit disappointment or behavioral issues during the long periods of time when Mother did not visit her. He stated that in August 2023, the Child asked

if the visits could stop because she believed Mother was upset with her. Mr. Dixon also testified that the Child did not ask about Mother. (N.T. 8/9/2024, p. 40 at 14-25; p. 41; p. 42 at 1-3 (Exhibit A)). He further testified that Mother did not engage in the Child's medical care or educational needs throughout the case. In Mr. Dixon's opinion, Mother visited but had not made any effort to parent the Child since she was placed in foster care. (N.T. 8/9/2024, p. 44 at 1-12 (Exhibit A)).

F.Y. has resided with her current foster parent since December 2023. Mr. Dixon testified that the Child shares a close bond with her foster parent and looks to her foster parent for parental guidance. In contrast to Mother, Mr. Dixon indicated that F.Y. looks to her foster parent to meet her basic needs as well as her emotional, medical, and educational needs. He stated that the Child goes to her foster parent for advice or if she has any issues or concerns. Mr. Dixon also testified that F.Y. began calling her foster parent "mom" after only a few months in the home. The foster parent also provides F.Y. with love, support, care, and comfort. Mr. Dixon testified that the foster parent is a pre-adoptive resource for F.Y. (N.T. 8/9/2024, p. 43 at 5-24; p. 45 at 18-25; p. 46 at 8-21 (Exhibit A)).

Mr. Dixon also spoke to the Child regarding her permanency wishes. The Child expressed to him that she wished to remain in the foster parent's home and be adopted by her. (N.T. 8/9/2024, p. 42 at 8-16 (Exhibit A)). He testified that it would be in F.Y.'s best interest to be adopted and that the most appropriate permanency goal was adoption. He stated that not only did the Child wish to be adopted, but she now resides in a stable home with a parent who provides for all her needs and with whom she shares a parental bond. (N.T. 8/9/2024, p. 47 at 1-12 (Exhibit A)). The Child similarly stated to CUA Case Manager, Ms. Anderson, that she wished to be adopted by her current foster parent. (N.T. 8/9/2024, p. 72 at 8-15 (Exhibit A)).

The Child, F.Y., also testified at the TPR hearing in the presence of all counsel. (N.T. 8/9/2024, p. 4-19 (Exhibit B)). F.Y. testified that she enjoyed living with her current foster parent and wished to continue living there until she grows up. She stated that she loves her foster parent and that the

foster parent treats her as if she were her own daughter. F.Y. indicated that she wished to be adopted by her current foster parent. (N.T. 8/9/2024, p. 5 at 23-25; p. 6 ay 6-7 and 12-14; p. 7 at 7-16; p. 9 at 17-21 (Exhibit B)). She also testified that she was willing to visit with Mother if the visits were supervised. (N.T. 8/9/2024, p. 9 at 23-25; p. 10 at 1-6; p. 12 at 10-16 (Exhibit B)).

The final witness was Mother. (N.T. 8/9/2024, p. 87-120 (Exhibit A)). Mother testified that she was unemployed but was recently approved for Social Security Income. She testified that the last time she worked was as a home health aid in 2023. Mother testified that she was receiving drug and alcohol treatment at the time of the TPR hearing and has received twice daily Suboxone treatments for five years. (N.T. 8/9/2024, p. 90 at 5-11 and 16-25; p. 91 at 5-7; p. 95 at 19-25; p. 96 at 1-2 (Exhibit A)). Mother refuted Mr. Dixon's testimony regarding her missed visitation and make-up visits. (N.T. 8/9/2024, p. 98-99; p. 102 at 9-10 (Exhibit A)). Mother also testified that she planned to obtain housing in November but did not provide any documentation of such housing. (N.T. 8/9/2024, p. 108 at 11-12 (Exhibit A)).

On August 9, 2024, this Court involuntarily terminated Mother's parental rights to the Child pursuant to 23 Pa. C.S.A. §2511(a)(1), (2), (5), and (8). In accordance with 23 Pa. C.S.A. §2511(b), this Court found that termination of Mother's parental rights best served the developmental, physical, and emotional needs and welfare of the Child. Mother's Counsel filed this Notice of Appeal and a Concise Statement of Errors Complained of on Appeal on August 27, 2024.

## III. STATEMENT OF MATTERS COMPLAINED ON APPEAL

In the Pa. R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal regarding the Order changing the Child's permanency goal to adoption as well as the Order Terminating Mother's Parental Rights, the Appellant identifies the following issue(s):

1. Whether the trial court committed reversible error when it involuntarily terminated mother's parental rights and changed the goal to adoption where such

determination was not supported by clear and convincing evidence under the Adoption Act, 23 PA.C.S.A. §2511(a)(1).

2. Whether the trial court committed reversible error when it involuntarily terminated mother's parental rights and changed the goal to adoption where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 PA.C.S.A. §2511(a)(2).

3. Whether the trial court committed reversible error when it involuntarily terminated mother's parental rights and changed the goal to adoption where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 PA.C.S.A. §2511(a)(5).

4. Whether the trial court committed reversible error when it involuntarily terminated mother's parental rights and changed the goal to adoption where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 PA.C.S.A. §2511(a)(8).

5. Whether the trial court committed reversible error when it involuntarily terminated mother's parental rights and changed the goal to adoption without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the child as required by the Adoption Act, 23 PA.C.S.A. §2511(b).

6. The appellant respectfully requests o reserve the right to support this Statement of Errors to be Complained of on Appeal pending receipt of the Notes of Testimony in this matter.

## IV.     <u>STANDARD OF REVIEW</u>

The proper standard of review when considering a trial court's determination of a petition to terminate parental rights is abuse of discretion. This standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re R.J.T.*, 608 Pa. 9 A.3d 1179, 1190 (2010). "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007). Additionally, in order to affirm, an appellate court need only agree with

the trial court as to any one subsection of § 2511(a), as well as § 2511 (b). *In re B.L.W.*, 843 A. 2d 380, 384 (Pa. Super. 2004).

Our standard of review of dispositional orders in juvenile proceedings is settled. The Juvenile Act grants broad discretion to juvenile courts in determining appropriate dispositions. *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super.2014). Indeed, the Superior Court will not disturb the lower court's disposition absent a manifest abuse of discretion. *In the Interest of J.D.*, 798 A.2d 210, 213 (Pa. Super. 2002). Appellate review of a weight of the evidence claim is limited to a review of the judge's exercise of discretion. See *Commonwealth v. Widmer*, 689 A.2d 211 (Pa. 1997), and *Commonwealth v. Brown*, 648 A.2d 1177, 1189-1192 (Pa. 1994).

## V.    DISCUSSION

### A. The Trial Court Properly Found that DHS met its Burden by Clear and Convincing Evidence to Terminate the Parental Rights of Mother Pursuant to 23 Pa. C.S.A. §2511(a)(1), (2), (5), and (8)

Mother alleges in her Concise Statement of Matters Complained of on Appeal, that this Court erred when it found that there was clear and convincing evidence that Mother's parental rights should be terminated. This Court disagrees.

Under Pennsylvania law, the burden of proof is on the party seeking termination of parental rights to establish, by clear and convincing evidence, the existence of grounds for termination. *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). It is well established that courts must examine the circumstances of each case and consider all explanations provided by the parent facing involuntary termination of his or her parental rights "to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id*. Clear and convincing evidence has been defined as testimony by credible witnesses who clearly relate facts that are so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction without hesitance

11

of the truth of precise facts in issue. *In Interest of J.M.*, 166 A.3d 408, 427 (Pa. Super. 2017) (citing *In re Novosielski*, 992 A.2d 89, 107 (Pa. 2010)).

This Court found that grounds for involuntarily termination of Mother's parental rights existed pursuant to 23 Pa. C.S.A. §2511(a)(1), (2), (5), and (8) and §2511(b). This Court will address each subsection separately.

**1. This Court Properly Terminated Mother's Parental Rights Pursuant to §2511(a)(1) of the Adoption Act**

With respect to 23 Pa. C.S.A. §2511(a)(1), Pennsylvania law provides that the rights of a parent may be involuntarily terminated after a petition has been filed if:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. 23 Pa. C.S.A. §2511(a)(1).

Under these facts and circumstances, this Court found that clear and convincing evidence was presented that Mother demonstrated a settled purpose of relinquishing parental claim to the Child and failed to perform her parental duties. The Child first entered foster care when an OPC was obtained in September 2018, almost six years ago. She has been in DHS care consistently since then. The record reflects that Mother's refusal or failure to perform parental duties since the F.Y.'s placement was demonstrated by her failure to fully comply with her Single Case Plan (SCP) objectives prior to February 1, 2024, when the petition to terminate her parental rights (TPR petition) was filed. Throughout the case, Mother was minimally compliant with her SCP objectives and made only minimal progress toward alleviating the circumstances which brought the Child into care.

In failing to complete her SCP objectives, Mother evidenced a settled purpose of relinquishing parental claim to the Child. She failed to alleviate the primary dependency concerns such as stabilizing her mental health, completing drug and alcohol treatment, and obtaining appropriate

housing. While Mother engaged in various mental health and drug and alcohol programs throughout the case, she has never successfully completed a mental health program or drug and alcohol treatment. CBH records reflect that Mother completed a mental health assessment in November 2023, but did not follow through with services. CBH records also reflect that Mother declined services for IOP treatment as recommended by Interim House following rehabilitation in January 2024. The record further reflected that Mother last engaged in drug and alcohol treatment at Horizon House in March 2024, but was not successfully discharged. While Mother testified that received Suboxone twice daily, Mother's CBH records made no mention of her being administered Suboxone and she has not provided documentation of such treatment. The record reflects that Mother was not engaged in mental health or drug and alcohol treatment at the time of the TPR hearing.

Additionally, Mother's has not provided proof of stable and appropriate housing to CUA. While she testified that she planned to obtain housing in November, she did not provide any documentation of such housing or its appropriateness for reunification. Mother also failed to provide proof of income throughout the case. Although she testified that she was recently approved for SSI, she did not provide documentation to CUA or the Court.

Mother also failed to consistently visit with the Child throughout the case. She was initially granted unsupervised community visits, but her visitation reverted to supervised in the community with 24-hour and same-day confirmation in August 2023 after numerous safety concerns were reported to the Court. After Mother's visits reverted to supervised, the record reflects that she did not visit F.Y. from August 2023 to March 2024. Since March 2024, Mother visited the Child sporadically. Mother's visits with F.Y. remained supervised at the time of TPR hearing.

Mother has had over five years to complete her SCP objectives and achieve reunification. This is much longer than the statute requires. Fully complying with her objectives would have demonstrated Mother's interest in caring for the Child. However, prior to the filing of the TPR

petition, Mother made minimal effort to fulfill these objectives. She failed to complete her SCP objectives and has not fully alleviated the circumstances which necessitated the Child's placement nearly six years ago. Thus, this Court properly found that termination of Mother's parental rights was warranted pursuant to §2511(a)(1).

2. **This Court Properly Terminated Mother's Parental Rights Pursuant to §2511(a)(2) of the Adoption Act**

When terminating parental rights pursuant to §2511(a)(2), the moving party must prove by clear and convincing evidence:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> 23 Pa. C.S.A. §2511(a)(2).

This ground for termination is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but focuses more specifically on the needs of the child. *In re Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996). Section 2511(a)(2) of the Adoption Act focuses on the child's present and future need for essential parental care, control, or subsistence necessary for their physical or mental well-being. *In re Adoption of M.J.H.*, 501 A.2d 648, 654 (Pa. Super. 1985). Even if a parent demonstrated love for their child or makes efforts to perform their duties, if a parent's incapacity cannot be remedied, their parental rights may be terminated. *Id.*

Applying §2511(a)(2) to this case, it is clear that DHS met its burden of demonstrating that termination of Mother's parental rights and changing the Child's permanency goal to adoption was proper. The Child has been in DHS care consistently since September 2018. Since then, the record reflects that Mother has not remedied her parental incapacity, which was primarily based on her drug and alcohol and mental health concerns. Mother engaged in numerous mental health and drug and alcohol programs throughout the case but has never been successfully discharged from any mental

14

health or drug and alcohol program. While Mother completed a mental health assessment in November 2023, she has not engaged in therapeutic services since then. While Mother entered rehabilitation at Interim House in January 2024, she declined services for IOP treatment notwithstanding Interim House's recommendation. Mother was not engaged in drug and alcohol or mental health treatment at the time of the TPR hearing. Despite mental health being a major dependency concern since the onset of the case in 2018, Mother's engagement has been sporadic and inconsistent. This Court continues to have concerns with Mother's mental stability and ability to safely care for the Child. In failing to address her mental health in the five years since the case opened, it is apparent to this Court that Mother lacks a concrete desire or ability to remedy the conditions that led to the Child's placement. Mother's failure to address her mental health and drug and alcohol concerns demonstrates to this Court that she will not remedy the conditions which necessitated the Child's placement.

Additionally, despite having several years to complete her housing SCP objective, Mother still has not provided proof of stable and appropriate housing for the Child. Mother was admittedly unemployed, and while she testified that she was recently approved for SSI, she has not provided documentation to CUA. Her housing and income SCP objectives remained outstanding at the time of the TPR hearing.

By failing to fully comply with her SCP objectives throughout the case, Mother's actions have left the Child without the essential parental care, control, and subsistence necessary for her physical or mental well-being. F.Y. has been in DHS care consistently for over five years and has spent over five years outside of the care and control of Mother. Since coming into DHS care in 2018, Mother has been minimally compliant with her SCP objectives. She has made minimal progress toward achieving reunification with the Child. For these reasons, the Court found that clear and convincing evidence was presented to involuntarily terminate Mother's parental rights pursuant to §2511(a)(2).

15

### 3. This Court Properly Terminated Mother's Parental Rights Pursuant to §2511(a)(5) and (8) of the Adoption Act

As the requirements for terminating parental rights under §2511(a)(5) and (8) are similar, this Court will address them simultaneously. To terminate parental rights pursuant to §2511(a)(5), the petitioner must prove that:

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. 23 Pa. C.S.A. §2511(a)(5).

DHS, as a children and youth agency, is not required to extend services beyond the period of time deemed as reasonable by the legislature. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 505, 509 (Pa. Super. 2001). The Pennsylvania Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster [kinship] care beyond reasonable temporal limits and after reasonable efforts for reunification by the agency have been ineffective. *In re N.W.*, 859 A.2d 501, 508 (Pa. Super. 2004).

In order to terminate parental rights under §2511(a)(8), the petitioner must prove that:

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. 23 Pa. C.S.A. §2511(a)(8).

16

Unlike §2511(a)(5), termination under §2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that initially led to placement. *See In re Adoption of R.J.S.*, 901 A. 2d 502, 511 (Pa. Super. 2006) (citations omitted).

In the instant case, this Court determined that DHS satisfied the requirements of Sections §2511(a)(5) and (8). F.Y. is currently nine years old. She has been in DHS care consistently since an OPC was obtained in September 2018, when she was just three years old. F.Y. has spent almost six years outside of care and control of Mother. The record reflects that F.Y. has resided with her current foster parent since December 2023.

Mother's substance use, mental health concerns, as well as her ability to safely care for the Child have been the primary dependency concerns throughout the case. Mother failed to alleviate these concerns by failing to consistently engage in and complete drug and alcohol and mental health treatment throughout the case. She has never successfully completed a drug and alcohol program or mental health treatment in the five years since F.Y. entered DHS care. She was not engaged in mental health or drug and alcohol treatment at the time of the TPR hearing. The Child also came into care in part due to housing concerns. At the time of the TPR hearing, Mother still did not have stable and appropriate housing for the Child. While there has been some compliance with her SCP objectives, there has not been enough progress made to enable reunification of the Child with Mother. Throughout the case, Mother only made minimal progress toward alleviating the circumstances that brought the Child into care despite CUA's attempts to facilitate reunification. The conditions which led to the Child's placement continue to exist and it is not likely that Mother will remedy those conditions within a reasonable time.

Moreover, the evidence clearly established that termination of Mother's parental rights would best serve the needs and welfare of the Child who has been in foster care for over five years. This is well beyond the statutory period required. She deserves permanency and should not wait

17

indefinitely. The Child is well-adjusted and happy in her current foster home. She testified at the TPR hearing that she wished to continue residing there and was clear that she wished to be adopted by her foster parent. She is closely bonded with her foster parent and looks to her for parental guidance as well as for safety and stability. The foster parent, not Mother, meets her basic needs as well as her medical, emotional, and educational needs. In contrast, while the Child loves Mother and the visits go well, she is only an inconsistent visitation resource for F.Y. Additionally, the Child testified that she was willing to continue visiting with Mother if the visits were supervised, which raises further concern for Mother's ability to safely care for the Child. Thus, this Court properly terminated Mother's parental rights pursuant to §2511(a)(5) and (8).

## B. The Trial Court Properly Found that it Would be in the Best Interest of the Child to Terminate the Parental Rights of Mother Pursuant to §2511(b)[2]

Having found that the statutory grounds for termination of Mother's parental rights have been satisfied pursuant to 23 Pa. C.S.A. §2511(a), this Court further found that termination of Mother's parental rights serves the best interest of the Child pursuant to §2511(b).[3]

Under §2511(b), the party seeking termination of parental rights must prove by clear and convincing evidence that termination is in the best interest of the child. *In re Bowman*, 436 Pa. Super. 647 A.2d 217, 218 (1994). In determining the best interest of the child, courts must consider both the needs and welfare of the child such as love, comfort, security, and stability. *Id.* See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Furthermore, the parent-child relationship is examined in order to determine what effect the potential termination would have on the child. *In*

---

[2] **23 Pa. C.S.A. § 2511(b). Other considerations.** --The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

[3] *See In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second of the analysis pursuant to Section 2511(b)").

*re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008). Typically, when examining the nature of the parent-child relationship, courts must consider whether there is a natural bond between the child and parent, and if termination of parental rights would sever "an existing, necessary, and beneficial relationship." *Id.* At 761. In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. In cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *Id.* at 762-63.

Based on the evidence, this Court determined that the Child would not suffer any irreparable harm if Mother's parental rights were terminated. F.Y. has been in DHS care consistently since 2018. She is now nine years old and has spent nearly six years outside of the care and control of Mother. While Mr. Dixon testified that F.Y. loves Mother and has a mother-daughter relationship with her, the Child does not share a parental bond with Mother in the same way that she does with her foster parent. While the testimony reflects that F.Y. enjoyed visits with Mother, she is a visitation resource rather than a parental figure. Additionally, the Child was willing to continue visiting with Mother, but with supervision. Thus, this Court properly found that termination of Mother's parental rights would not destroy an existing, necessary, or beneficial relationship between the Child and Mother.

In determining the best interest of the child, this Court must consider both the needs and welfare of the child such as love, support, care, and comfort. F.Y. does not look to Mother to meet these needs. She does not ask about Mother or look to her for parental guidance. Instead, F.Y. looks to her foster parent to provide her with love, support, care, and comfort. She also looks to her foster parent to meet her basic needs as well as for safety and stability. F.Y.'s foster parent, not Mother, meets her medical, educational, or emotional needs. The Child has resided in this foster home since December 2023. She is well-adjusted in the home, loves her foster parent, and share a close parental bond with her. The testimony also reflects that the Child began calling the foster parent "mom" after only residing in the home for a short time and that the foster parent considers F.Y. to be one of her

daughters. When Mr. Dixon and Ms. Anderson spoke to the Child about permanency, she expressed that she is happy where she currently resides and wished to remain there. The Child also testified at the TPR hearing that she wished to be adopted by her foster parent and to live with her until she grows up. The foster parent is a pre-adoptive resource for F.Y. Mr. Dixon also testified that it would be in F.Y.'s best interest for Mother's parental rights to be terminated so that she can be freed for adoption. For these reasons, the Court properly found that the Child's developmental, physical, and emotional needs were best met by termination of Mother's parental rights.

Clear and convincing evidence was presented to establish that there would be no irreparable harm caused to the Child if this Court terminated Mother's parental rights. The Child has been in DHS care for nearly six years. She deserves permanency and should not wait indefinitely. This Court properly found that it would be in the best interest of the Child to grant DHS's petition to terminate the parental rights of Mother pursuant to §2511(b) and for the Child's permanency goal to be changed to adoption.

## VI.    **CONCLUSION**

For these reasons, this Court respectfully requests that the Order dated August 9, 2024, Terminating Mother's Parental Rights and changing the Child's permanency goal to adoption, be AFFIRMED.

BY THE COURT:

Date: _September 11, 2024_

_____
Cateria R. McCabe, Judge

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing opinion has been filed and served upon the following parties, as set forth below:

**PACFILE**

**Guardian Ad Litem:**
Maureen F. Pie, Esquire
8 Summit Street, Suite 200
Philadelphia, PA 19118

**Child Advocate:**
Claire Leotta, Esquire
3331 Guilford Street
Philadelphia, PA 19136

**Counsel for Mother:**
William A. Calandra, Esquire
50 Wellington Road
Ardmore, PA 19003

**Counsel for Father:**
Karen Deanna Williams, Esquire
1500 Market Street, 12th Floor East
Philadelphia, PA 19102

**Trial Counsel for DHS:**
Luisa Garcia, Esquire
Law Department, Child Welfare Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

**Appellate Counsel for DHS:**
Kathleen Bola Kim, Esquire
Law Department, Child Welfare Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

**Appellate Counsel for DHS:**
Robert D. Aversa, Esquire
Law Department, Child Welfare Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

September 11, 2024
Date

Cateria R. McCabe, Judge

21